J. C. CLEMENTS ET AL. v. SCHUYL. R. ETC. R. CO.

W. R. THOMPSON v. SCHUYL. R. ETC. R. CO.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 4 OF PHILADELPHIA COUNTY.

Argued January 23, 1890.—Decided February 24, 1890.
[To be reported.]

1. When it is difficult or impossible to ascertain the damages for the breach of a contract by any fixed rule, there is a reason why the parties should liquidate them in advance, as stipulated damages, and why the courts should afterwards hold them to such liquidation.

2. But, when the damages can be assessed easily and accurately, and they are fixed by the contract itself at an unconscionable sum, it is the plain duty of a court exercising equity powers to relieve against such injustice, and to treat the sum named as a penalty merely, which will do no injustice to either party.

3. A contract to raise a dwelling, the rental value of which was about $25 per month, provided that the owner should be paid $150 per week after the expiration of the period within which the work was to be completed; in such case, the weekly payment was to be treated merely as a penalty and not as stipulated damages.

Before PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-COLLUM and MITCHELL, JJ.

Nos. 127, 128 July Term 1889, Sup. Ct.; court below, Nos. 89, 88 June Term 1887, C. P. No. 4.

CLEMENTS v. RAILROAD CO.

On June 3, 1887, Joseph C. Clements and Margaret his wife, brought assumpsit against the Schuylkill River East Side Railroad Company and the Union Trust Company, to recover upon the penal bond of the defendant companies to the plaintiffs. Issue.

At the trial on May 8, 1889, the plaintiffs put in evidence a sealed contract between Joseph D. Ellis, of the one part, and Joseph C. Clements and Margaret Clements, of the other part, providing as follows:

" Whereas, by ordinance approved July 3, 1885, it was provided that the change of grade on Hamilton street should be

made by the city of Philadelphia, and all expenses of the same first-paid by the city of Philadelphia, including all damages to the property-holders, which amount it is afterwards provided should be paid by the Schuylkill River East Side Railroad Company to the said city.

"Now for the purpose of facilitating this change of grade, this agreement made this first day of March, 1886, between Joseph D. Ellis, of the first part, and Joseph C. Clements and Margaret Clements, the owner of 2503 Hamilton street, of the second part, witnesseth that the said J. D. Ellis agrees at his own proper expense to raise the house 2503 Hamilton street to the new grade of the city, as provided for in the ordinance aforesaid, fill up the cellar of said house and cement the floor of same with good cement and sand, to pay for all damage done to furniture or building, to replace all existing arrangements for water, gas, sewerage, and heater, and connections for heating, etc., the said house, and to pay the said Margaret Clements as damages in full for the said change of grade in front of 2503 Hamilton street, including all damages arising from the inconvenience to herself and family, the sum of $500, and the further sum of $150 per week for each and every week after the expiration of thirty days from the date of delivery of the property to the party of the first part. . . . .

" And for the faithful performance of the above contract, on the part of the said J. D. Ellis, he agrees to procure and deliver to the said Joseph·C. Clements and Margaret Clements, the owner, the bond of the Schuylkill River East Side Railroad Company in the sum of $10,000, the said bond being fully secured by the indorsement of security of the Union Trust Company of Philadelphia. . . . ."

The plaintiffs then put in evidence the bond of the defendant companies to the plaintiffs, dated March 6, 1886, in the sum of $10,000, with the following recital and conditions:

" Whereas, a contract has been entered into by Joseph D. Ellis to raise house No. 2503 Hamilton street, the title to the said property standing in the name of Margaret Clements, to the new grade of Hamilton street, as fixed by the ordinance approved July 3, 1885, the said contract being hereunto attached.

" Now the conditions of this bond are, that should the said

J. D. Ellis fully and faithfully comply with the terms of this contract, made March 6, 1886, then and in that event, this bond will be null and void; and if he should not comply with the terms of the said contract, and if in the execution of the said contract any damage should be done either to the building or the furniture of the said Margaret Clements, which he shall not repair or make good, then and in that event this bond is to be security for the full amount of the said damage or injury done as aforesaid."

It was shown that the grade of Hamilton street, as established by the ordinance of July 3, 1885, was at the rate of 5 feet to the 100, but that on November 23, 1885, the board of surveyors of the city refused to confirm the grade fixed by said ordinance, and referred the matter back to councils; that on April 5, 1886, an ordinance was passed amending the ordinance of July 3, 1885, and fixing the grade of Hamilton street at 5.28 feet to the 100; and that Ellis was given possession of the plaintiff's property on March 8, 1886, and proceeded with the work almost immediately. The testimony as to when the property was ready for occupancy, and when re-possession of it was delivered, was conflicting, the plaintiffs testifying that they did not obtain possession until December 14, 1886. The sum of $500, provided for by the contract as damages to the real estate, was paid by Ellis to the plaintiffs, who in this action claimed $200 for injuries to the furniture, etc., and $150 per week as stipulated damages for the delay in the completion of the work. It was in evidence that the real estate of the plaintiffs was worth about $3,000, with a rental value of $25 per month.

At the close of the testimony, the court, ARNOLD, J., charged the jury in part as follows:

[I will, before I go to the next part of the case, say to you that it is of no importance in this case whether the grade was actually confirmed by the city surveyor before possession was taken, or afterwards. It is undoubtedly the fact that a change of grade was contemplated by ordinance approved July 3, 1885; and it was in anticipation of that change of grade that this contract was made. Now, if the grade had never been changed, Mrs. Clements could not compel Mr. Ellis to raise her house

Charge of Court below.

up, but as Mr. Ellis went on under the contract, and did commence to raise the house, he and his sureties are responsible, under the contract, for all damages done in case any were done. It has turned out that the grade has been changed. I say it is unimportant, in view of the fact that Mr. Ellis took possession and carried out the contract, or attempted to do so, when it was changed, before or after the raising.] [6]

Mr. Ellis went on with the contract and took possession. Has he complied with his contract to put the building in good condition? Has he indemnified her against damage? In other words, has he given her property back to her without damage? All these are matters for you. [I say to you that the important part of this case, to which I now come, is that which relates to the sum claimed, of $150 per week. I do not say to you for what period of time or what space of time that was to be paid. It is something which the contract itself does not mention. Counsel themselves have not alluded to it. I have read the contract with considerable care, for the purpose of seeing whether there was anything in it to fix the time when the payment of the $150 stopped. If you take the contract itself for a guide, it would never stop. He agrees to pay her the further sum of $150 per week for each and every week after the expiration of thirty days from the date of the delivery of the property to him. When did it stop? It nowhere appears upon that contract when it is to stop. This furnishes, therefore, what we call in law a latent or hidden ambiguity. It is not a matter which I can decide for you. It is a matter for you to decide. What was the intention of the parties in this respect? Was he to pay her $150 a week permanently and forever? That would not be reasonable. Then, when was it to stop? Was it to stop from the time, as the plaintiff says, when they gave possession to her? Well, that might not be reasonable either. The contract does not say that they shall give back possession.

I think a reasonable construction of the contract is, that they were to pay $150 a week after the expiration of the thirty days, up to the time that she might have got possession; or, in other words, to pay for such time as the contractor here, and the workmen, kept her out. In other words, I do not think —though it is a question for you to say, and I will leave it to

Charge of Court below.

you to say—I do not think that the company was bound to go to her at any particular time and say, "There is your house, Mrs. Clements, and that stops our $150 a week;" but I do think that the reasonable meaning of the parties was, or that the construction of this agreement is, that $150 a week was to be paid during such time, after thirty days, as Ellis kept her out. Now, how long was that? . . . . . I think it would be well then for you to inquire, as an important element in this case, when it was that this house was raised and finished to a proper state to permit her to resume possession of the property, and to allow her for such time as she was kept out by the act of Mr. Ellis, or his agents or workmen. . . . .

That is a matter altogether for you to determine upon the evidence. I have no opinion whatever to give you, and leave it to you to inquire how long it was that Mrs. Clements was kept out of possession of the property by the occupancy of it, or by its not being completed under this contract.] [7]

[If she was kept out by reason of the house itself not being finished or completed for her to go into until December, she is entitled to her demurrage of $150 a week, or liquidated damages, I will call it, of $150 a week; but if you think that that is too long; if you believe that she could have gone in that house say in May, June, August or September, as well as in December, when she did go there, then this sum of $150 a week ought to be stopped. How long she was kept out by reason of this contract being uncompleted, is a question for you. Having fixed how long she was kept out, you may then allow her the sum of $150 a week after the expiration of thirty days from the time they took possession, which seems on all sides to be March 6th or March 8th.] [8] . . . .

The defendants request the court to charge you, as follows [inter alia] :

2. The weekly amounts named in the contract in case of delay in the completion of the work, upon which the plaintiffs rely for a verdict, are to be considered as a penalty, and not liquidated damages. The jury, therefore, cannot in any event allow any larger sum as damages for delay than that sum which will repay for actual losses proved by the plaintiffs due to such delay.

Answer: Refused. [10]

Charge of Court below.

4. If the jury find the plan of grade contemplated by the ordinance of July 3, 1885, and referred to in the contract, as regulating the execution of said contract, was not carried into effect because of a refusal by the board of surveyors to confirm said plan, but on the contrary, that the plan finally confirmed was confirmed under and by virtue of an ordinance of April 5, 1886, and according to a different grade regulation of 5.28 feet per 100 feet, then the contract in suit cannot be enforced according to its terms. The establishment of the grade regulation of 5 feet in the 100 contemplated by the ordinance of July 3, 1885, was a condition precedent to its fulfilment, and the plaintiffs cannot demand anything more than reasonable promptness and speed in the execution of the work under all the facts incident thereto.

Answer: Refused.[12]

The jury returned a verdict in favor of the plaintiffs, for damages to the house and furniture, $200; for 28 weeks' delay, $4,200; total, $4,400. A rule for a new trial having been discharged, the defendants took the appeal to No. 128, assigning for error [inter alia]:

6–8. The portions of the charge embraced in [ ] [6 to 8]

10–12. The refusal of the defendants' points.[10 12]

### THOMPSON V. RAILROAD CO.

On June 3, 1887, William R. Thompson brought assumpsit against the Schuylkill River East Side Railroad Company and the Union Trust Company, to recover upon the bond of the defendant companies to the plaintiff, dated March 24, 1886, in the sum of $7,000. Issue.

This cause was tried on May 21, 1886, before ARNOLD, J., when the case shown was in all respects the same as that shown in Clements v. Railroad Co., supra, except that damages were claimed only for the delay in completing the work of raising the plaintiff's dwelling, which adjoined that of Mr. and Mrs. Clements, fronting on the same street. The jury returned a verdict in favor of the plaintiff for $2,800, and judgment having been entered the defendants took the appeal to No. 127, filing specifications of error raising the same questions raised in the preceding case. The two cases were argued together in this court by the same counsel.

*Mr. William H. Addicks*, for the appellants:

1. The contract of Joseph D. Ellis for the raising of the house of the plaintiffs, was a contract to raise it to the grade provided for in the ordinance of July 3, 1885. The grade provided for in that ordinance was in fact never carried into effect, by reason of the refusal of the board of surveyors to confirm the grade. No other meaning can be attached to the contract than that it was contingent upon the lawful adoption of the grade contemplated by the ordinance referred to. It never was adopted. The contract, therefore, was for the performance of a thing impossible at the time, made impossible by legal prohibition, and it therefore never had any force or validity: Plan No. 166, 93 Pa. 221; Wharton on Contracts, §§ 298, 300, 305, 322; Ridgway v. Sneyd, Kay 627; Clifford v. Watts, L. R. 5 C. P. 577; Walker v. Tucker, 70 Ill. 527; Taylor v. Caldwell, 3 B. & S. 838; Jones v. Judd, 4 N. Y. 412.

2. The weekly sums mentioned in the Ellis contract are penalties, and not liquidated damages. An examination of all the reported cases in Pennsylvania, as well as the decisions of the Supreme Court of the United States, in this class of litigation, will justify the statement that when sums are mentioned in a contract to be paid in case of delay, they will be treated as a penalty, or a security for actual damages, even if the parties have expressly stipulated that they shall be liquidated damages, wherever it appears: (*a*) That the damages suffered by the delay are ascertainable and capable of measurement and proof; and (*b*) That the sum claimed, as compared with the value of the subject matter of the contract, or the actual damages suffered, would be grossly excessive if treated as liquidated damages; in other words, unconscionable: Mathews v. Sharp, 99 Pa. 560; Streeper v. Williams, 48 Pa. 450; Shreve v. Brereton, 51 Pa. 175; Curry v. Larer, 7 Pa. 470; Burr v. Todd, 41 Pa. 206; Powell v. Burroughs, 54 Pa. 329; Faunce v. Burke, 16 Pa. 469; Pennypacker v. Jones, 106 Pa. 237; Moore v. Colt, 127 Pa. 289.

*Mr. George Junkin* (with him *Mr. Charles H. Downing*), for the appellees:

1. The value of the property as a whole was of no account in the case. This was not a suit to recover damages to the

property by reason of a change in the grade. The change of the grade was the reason for the making of the contract; that was all. Nor did the change of grade made by the ordinance of April 5, 1886, from that of the ordinance of July 3, 1885, affect the contract. Mrs. Clements had a right to elevate her house as she pleased, irrespective of the city grade, and Mr. Ellis had a right to contract with her to do it. Nor does it appear in the evidence whether the house was raised to the grade fixed by the first, or to that fixed by the second ordinance. Nor does it matter; the difference was .28 of a foot to the 100. De minimis, etc. Mr. Ellis did the work, and the plaintiffs accepted it, and that was the end of it.

2. Was the payment to be made weekly liquidated damages, or a penalty? It would be an affectation of learning to cite all the cases in which this subject has been considered in this state and elsewhere. The result of them is, that, like a will, each one of them depends upon the language and circumstances surrounding it: Moore v. Colt, 127 Pa. 289. A careful examination of all the reported cases in Pennsylvania, as well as those elsewhere decided, will show that the governing principle is, " that where the parties liquidated their damages for a failure to perform by the plain words of their contract, equity will not relieve by turning it into a penalty: " Westerman v. Means, 12 Pa. 97; Faunce v. Burke, 16 Pa. 469; Wilson v. Horstman, 2 Phila. 296; Streeper v. Williams, 48 Pa. 450; Powell v. Burroughs, 54 Pa. 329; March v. Allabough, 103 Pa. 335; Fox v. Snyder, 9 Phila. 285.

CLEMENTS V. RAILROAD CO.

OPINION, MR. CHIEF JUSTICE PAXSON:

The question whether a sum named in a contract, as a compensation for its breach, is to be regarded as a penalty or as liquidated damages, has been so recently considered and discussed that it is not deemed necessary to review the authorities: Streeper v. Williams, 48 Pa. 450; Mathews v. Sharp, 99 Pa. 560; Moore v. Colt, 127 Pa. 289. The intention of the parties has much to do with it. Yet even that will be controlled where equity demands it. A sum expressly stipulated as liquidated damages will be relieved from if it is obviously to secure a sum capable of being compensated by interest. It is difficult

to lay down a general rule applicable to such cases, for the reason that each case as it arises is to be determined by its own peculiar facts, more than by a rule of general application. The nearest approach to a rule upon this subject is to be found in Streeper v. Williams, supra, where it was said by Mr. Justice AGNEW: "Upon the whole, the only general observation we can make is, that in each case we must look at the language of the contract, the intention of the parties as gathered from all its provisions, the subject of the contract, and its surroundings, the ease or difficulty of measuring the breach in damages, and the sum stipulated, and from the whole gather the view which good conscience and equity ought to take of the case." And I will supplement these well-considered remarks by saying that where the damages are unconscionable, and grossly disproportioned to the injury sustained, equity will generally relieve therefrom by treating the sum as a penalty, for the reason that the parties to the contract probably regarded it as such when the contract was made.

It remains to apply these principles to the facts of this case. In the contract between the plaintiffs and Ellis, by which the latter agreed to raise the house No. 2503 Hamilton street, the damages for the delay are not designated either as a penalty or as liquidated damages, but the said Ellis is to pay $150 per week "for each and every week after the expiration of thirty days from the date of the delivery of the property to the party of the first part," (Ellis.) The work was not completed within the thirty days. The evidence is not clear as to the exact extent of the delay, but the jury returned a verdict for the plaintiffs for $4,400. The learned judge below was requested by the defendants' second point to instruct the jury as follows: "The weekly amounts named in the contract in case of delay in the completion of the work, upon which the plaintiffs rely for a verdict, are to be considered as a penalty, and not liquidated damages. The jury, therefore, cannot in any event allow any larger sum as damages for delay than that sum which will repay for actual losses proved by the plaintiffs due to such delay." The learned judge refused this point, and instructed the jury that the sum named was to be treated as liquidated damages. The jury allowed $150 per week for the delay.

When it is considered that the house and lot in question

Opinion of the Court.

was worth about $3,000, and its rental value about $25 per month, and that for a delay of less than a year the plaintiffs recovered a verdict for $4,400, the unconscionable character of this transaction becomes clear. It would be an insult to the intelligence of the parties to suppose they ever contemplated such a result when they entered into the contract. The damages for the delay were easily ascertainable. They could be fixed approximately by the rental value of the property. When it is difficult or impossible to ascertain the damages by any fixed rule, for the breach of a contract, there is a reason why the parties should liquidate them in advance, and why the courts should hold them to such liquidation. But when the damages can be assessed almost as easily and as accurately as in the case of a bond for the payment of money, and they are fixed by the contract itself at an unconscionable sum, it is the plain duty of a court exercising equity powers to relieve against such injustice, and treat the sum named as a penalty merely. This does the plaintiffs no injustice. Upon another trial they will be entitled to recover for any loss they can show they have sustained. But it is not likely they will recover $1,000 in excess of the full value of their house.

This disposes of the controlling point in the case. As it must go back for re-trial, however, it is proper to say that the change of grade referred to in the twelfth assignment possesses little significance. The contract was to raise the house to the grade of the city, as provided by the ordinance approved July 3, 1885, and the contract would have been fulfilled by conforming to that grade, notwithstanding a subsequent change of the grade by the city.

There are some other matters which might be referred to as error, but they result from the theory upon which the case was tried. They will doubtless be corrected upon another trial.

The judgment is reversed, and a venire facias de novo awarded.


THOMPSON V. RAILROAD CO.

OPINION, Mr. CHIEF JUSTICE PAXSON:

This case is ruled by Clements v. same defendants, just decided.

The judgment is reversed, and a venire facias de novo awarded.